Please proceed, Counsel. This is the appellate. You're on. Did you think I said, please be seated? Yes. Oh, I said, please proceed. I'm sorry. Showtime. Good morning, Your Honors. May it please the Court. My name is Julie Lucht. I'm here on behalf of US Bancorp. And thankfully, we don't have any tax issues in this case. This case concerns Washington's narrow exception to the at-will employment doctrine. And in Washington, when an employer makes a promise in a written employee handbook that contains a promise of specific treatment in specific situations, the Court will enforce that promise if the employee is able to show justifiable reliance on that written promise. I wanted to raise that we did receive the 28J letter and a citation to a new case recently decided. Yes, Your Honor. And counsel probably intends to comment on that case and how that case affects if it does affect the decision and the issues before us. Yes, Your Honor. The Korslund case, which came out from the Washington Supreme Court on December 22nd of 2005, clarified two issues relevant to this appeal. First, we've set forth in our briefing the argument that Washington has never recognized a breach of specific promise, a breach of promise of specific treatment in specific situations based on an employer practice or unwritten policy only in the context of an employee handbook, manual, or other policy issued by the employer, which makes sense because this is not a traditional contract claim. It's a Court-created exception to the at-will employment doctrine, which has been required that the employer commit this in writing in order to hold the employer to it. But isn't there writing in this case? Isn't the handbook a writing? Yes, Your Honor. Okay. And the issue that we have is that, A, we believe that the district court improperly interpreted the writing that's in front of this Court, and this Court's in the same position as the district court was, just as good of a position to interpret that written language, which, on its face, reserves discretion for a U.S. bank to determine when immediate termination is warranted. It specifically says, when appropriate, the bank will use the word will. See, that's the problem. It has kind of mixed language there. It has discretionary language and mandatory language in there. That's the problem. I understand the problematic nature of the use of the word will. However, I think that you have to read that as discretionary, because otherwise the first phrase and the last phrase of a very short paragraph are rendered meaningless, because the paragraph opens with, when appropriate, meaning that there will be sometimes that it's inappropriate, and then even more clearly, the phrase ends with, in some cases, the bank may determine that immediate termination is warranted. And there's no way to read that sentence without interpreting it as there are cases when the bank will go forward with immediate termination and will not use progressive counsel. But similar language has been interpreted as a specific promise by the Washington courts of appeal. I believe that where the courts have found a promise to be created, the language has not been as clear as in this case that it was discretionary. It provides specific situations where termination will occur. It doesn't have the outlet as occurred here, where it says, in some cases, immediate termination. The bank may determine that immediate termination is warranted. And a key part of that phrase is that it is the bank that gets to determine whether or not immediate termination is warranted. Is counsel also suggesting that the trial court did not have evidence or make specific findings on the inducement, since plaintiff must show inducement? Yes, Your Honor. Corzuland, I think the language of Corzuland is consistent with the language of all of the cases that have recognized this claim in finding that it must be a writing as opposed to employer practice. But more importantly, Corzuland specifically deals with the issue of what constitutes justifiable reliance and reversed the appellate court's decision that you didn't need to show justifiable reliance on the written policy itself. And in this case, the testimony of the plaintiff here, Ms. Messenger, and there is a the bankruptcy trustee is now the real party in interest, but I'm just going to refer to Ms. Messenger if that's okay. Ms. Messenger testified that she relied on general, basically general policies and practices and training she had received and sort of the good feeling that arose out of that. And in Bullman, the Washington Supreme Court previously had said that the general atmosphere is not enough for the employee to rely on. And in Corzuland, most recently, the Supreme Court was very clear that that's not enough, that it must be the written promise itself that the employee show justifiable reliance on. How would that be shown? How would one show that she justifiably relied on the promise? Well, she'd need to testify that she continued her employment and show that she – she basically didn't seek other employment and show that she continued her employment based on that particular written promise. And in this case, that's problematic because she received the written promise two weeks prior to her discharge, well after she engaged in the conduct for which she was terminated. And her testimony about the reliance was testimony about this general training that she had received on coaching and not about the written promise that she now alleges contained – that was contained in the handbook. And the problem where we see clear error in the district court's decision is that the district court specifically found that it was immaterial that Ms. Messenger received the current version of the handbook two weeks prior to being terminated because there's no question that it was in effect at the time she was terminated. That's – that is incorrect as a matter of law under Corzuland. And then secondly, the Court goes on to say, And evidence was introduced that the pattern and practice of the defendant in the treatment of their employees created the promise of progressive counseling in certain situations. And that's incorrect as a matter of Washington law. That vastly expands Washington law. And what that – the impact of that would be every employee could allege that there was some unwritten practice by the employer that their termination violated.  So what language in Corzuland are you relying upon to support your argument on the justifiable reliance issue? Your Honor, it's – it hasn't been – it hasn't been published in the reporters yet, but it is a – I'm going to cite you a Westlaw. We have the Westlaw. If we have the Westlaw version, specifically what language are you relying on? Okay. At page – at the very bottom of page 11, the Court says, Dynacorp maintains that an employee must prove that he or she was aware of the specific promises alleged breached and that those specific promises induced him or her to remain on the job and not seek other employment. We agree. On page 12, the Court goes on to discuss Buhlmann and says – Wait, wait. You're at star page 11? Star page 11, the very bottom. And at page 10 of your – I think you have the same printout as me. It's in the second – the right-hand column in the middle of the page. I must have a different – December 22nd? December 22nd. Yeah, I have different – I have a different format. Yeah. For some reason, I have a different format. Page 12 starts – page star 12 starts with in Buhlmann. And it's just the last sentence above that. In Buhlmann, it's page 12 on mine. Okay. That's the one. Okay. In Buhlmann, we held that the justifier reliance – that's what you're talking about? I just read the sentence before that, but I was just about to say also that following paragraph is specifically on point where it talks about Buhlmann, and then it says – it says, We reaffirmed earlier cases that have – that said that the employee must have been And that specific promise must have induced the employee to remain on the job and not seek other employment. Right. But it doesn't show what level of proof is required. This is kind of a general statement reinforcing the holding in Buhlmann. Justifier reliance cannot be established where the employee does not even show awareness. We don't have that situation here. Because as you stated, the policy was given to her two weeks in advance. So now we're looking at the language that you're quoting. We rejected the premise that an employee could show justifier reliance by showing that an atmosphere of job security and fair treatment induced the employee. But it doesn't say what is required. So what are you using to support your argument regarding what has to be shown, what specifically has to be shown by the employee? Well, Buhlmann goes – the Buhlmann opinion itself goes more – discusses more at length what is necessary to show justifiable reliance. But here, because Judge Whaley specifically found that the reliance – it didn't matter that she got the handbook two weeks ahead of time because, A, it was just simply in effect, not that she relied on the handbook. And, B, that it was the – basically the practice that created the promise, not the written language. And those two – Now, in his – you're saying that the judge's ruling was that she relied on it before she received it. Is that what you're saying, the judge said? Well, he's basically saying it was okay for her to rely on the practice as opposed to the specific language of the policy that – the only written policy we have in this case. And under Buhlmann – under Buhlmann and Korslund, that's not permissible. You have to show that you relied on the specific written policy, not the employer-provided policy. Well, I see this as two different issues. The first issue I see is whether or not the employee shows awareness of the specific promise. And in that – this case, didn't the judge make a finding that she was aware of the policy before she was terminated? It's undisputed that she received it before she was terminated, but it was just two weeks. What's disputed is whether she relied upon it or was induced by it to do anything. Exactly, Your Honor. And there is nothing in the record to suggest that she was induced to remain on her job and to forego other employment based on this policy she received two weeks before. Is it your position that you can't use the practices of the company to show reliance? Is that your argument? That is my argument, Your Honor. Now, where you can use the practices of the company is once you have established a written – written promise of specific treatment in specific situations, then when the employer says, well, but that's not effective because we've effectively disclaimed it, then under Washington law, the court can go out and look at the employer's practices and extrinsic evidence to determine whether or not it was the intent of the employer to disclaim it. I see your point. And then – then you move into the justifiable reliance, assuming that the court finds, as it did here, that based on the practice and other evidence that the disclaimer was not effective, then you move into the justifiable reliance. And what Buhlmann and Korslund make clear is that you don't get to go back into that pattern and practice type evidence to show the reliance. You have to show reliance on the actual promise itself. And Korslund is even more – in Buhlmann, the employee hadn't even seen the actual policy they were relying on while they were employed. And in Korslund, it just makes it much more clear. If the employee said, I saw the policy and I relied on it and it gave me a sense of security because I read it, would that be enough? I think the employees required to show that they – they forgoed other employment and remained on their job. And here, Ms. Messenger's testimony was about a job – you know, she remained on the job and decided not to take an offer that occurred well in advance of her receiving this actual language. So the evidence of reliance and staying on the job and not searching out other employment and rejecting other employment was well in advance of her actually – What if you don't seek other employment? You just say, I stayed on this job because I relied on this promise of security. Well, again, Buhlmann, I think, elaborates the standard a little more, and I think that you do – you are required to show that you gave up in some way other opportunities, not just that you remained on the job if you had no interest of – you know, if you would have remained otherwise, there wouldn't be any reliance. You need to show that you did something in reliance, and presumably, you know, if you didn't have any intention of leaving your job anyway, that would be enough. But it would seem to me that it would not necessarily have to be that you didn't take another job. I mean, you could have a fact pattern that one just simply stays with the company. They like this company. They like this job. And now they're relying upon this policy as well as the printed material and the practice that they have job security. Well, I'd agree that the Court would probably not require that an employee show that they rejected other job offers, but I think that the Court would need to see that they remained on this job, not because they liked the paycheck and they liked the, you know, the other aspects of the job, but because they – of this particular promise. They needed to somehow alter their position. Because job security is very important in this time for people. Well, you know, I'd agree that that could be a factor, but I think they need to show that they altered – in order to show justifiable reliance, you need to show you somehow altered your position. What language are you relying upon in Bowman to say that that's an absolute requirement to show reliance? Your Honor, if I could address that on rebuttal, I'll pull – and I apologize. I do want to reserve a few minutes for rebuttal here. And I do want to address the – Before you use up all your time, let me pose a question on a different subject. Sure. The reason for her termination. I understand the argument about it's the company's decision, not the Court's decision and so forth. But I do have some difficulty relating the sale of an insurance policy as an account transaction where you're dickering with your own account balance and so forth. What's the problem with her selling an insurance policy, in effect, to herself? Well, and she was not discharged for selling the policy to herself in that, you know, this was in the context of a contest. And although it raised some eyebrows that you're selling a policy to yourself when there's a contest going on to see how many people can sell as many policies, that – she wasn't fired for cheating the contest. She was fired because she didn't have another employee process the transaction for her. And at the bank – Was it the kind of transaction that she could have fiddled with? I mean, I understand if you're dealing with your account balance or something or payments on your loan. But presumably there's an insurance company that's really on the other side of that transaction. And so just conceptually, I have some difficulty understanding why the sale of an insurance policy fits into a PAMBA policy about account transactions. Well, it is required to be done by a licensed bank employee. She happened to be a licensed bank employee, but the bank's practice is you don't process your own transactions. Some people process each one. I'm sorry? Your account transactions. Well, based on the testimony from the bank manager, the district manager of 24 years' experience at the bank and the HR manager with 30 years' experience at the bank, they interpret that policy to be broader. And the policy specifically says, including but not limited to in the policy. And – Including but not limited to what? It says including but not limited to, and then it lists transactions. Is it a list insurance policy in there? No, it does not. And – That's the problem. If you're going to fire somebody, they have to have notice of what it is that you're firing them for, don't they? Your Honor, I respectfully disagree. Washington has rejected the implied good faith and fair dealing covenant in an employment contract. It's – Okay. It doesn't be – That's unless there's a specific promise otherwise. Okay. Then doesn't the employer have to act reasonably in accordance with this policy if you have that specific promise? If the court finds that there's a promise not to terminate except for just cause, which I don't believe is a reasonable interpretation of the policy, then the employer is required to show that the employer reasonably believed that this was a – and I don't think there's any issue of fact here that it was never argued that the HR manager and the district manager reasonably believed that this was a violation of the policy. Well, if it's not consistent with the – with the written policy, did the district court judge reach this issue? That's the question I was going to ask. Didn't the district court judge find that what she did was not in violation of the specific section that you just related to, not selling a policy to yourself? Didn't the trial court find that? The – based on the language of the policy itself, the trial court found, the district court found that she hadn't violated the policy, but that's not the standard. The standard is, did the employer reasonably believe that she violated the policy? And the bank's entitled to some deference into its interpretation of its own policy. It doesn't include everything out there that's not allowed, but this was a branch manager. She was in charge of everyone in the branch. And these two very experienced bank managers – it was a red flag. Whenever anybody does anything on their – themselves, they're just supposed to have somebody else sign off on it. And that's the bank rule in order – it's a financial institution. It's a reasonable rule. And even though it hasn't been set forth as a particular example in the policy at issue, it was crystal clear to these two managers, very seasoned, that this was self-dealing and you don't self-deal with yourself as a manager at the bank. Unless Your Honors have any other questions, I will save the rest of my time for rebuttal. Thank you. Thank you.  May it please the Court. My name is Paul Burns. I'm a sole practitioner in Spokane. It's my privilege to represent the appellees in this case, Susan Messinger and the bankruptcy trustee. Immigration law to tax law to state employment law, I don't think I could do your job. We can make a hash of any subject. Maybe counsel could start where we were. Do you believe that the district court specifically found that the employee, Ms. Messinger, did not violate the account transaction policy? Your Honor, that's exactly what the district court found, and that finding was supported by the evidence. A couple of comments about that. Before we leave that, is that equivalent to a finding that the employer did not act reasonably in terminating her for violation? Well, I think ultimately that's the conclusion, absolutely. But did the district court make that conclusion? That the employer did not act reasonably? Right. Well, the district court concluded that the employer breached a specific promise and that the plaintiff had not violated the account transaction policy to begin with. But didn't make the specific ruling that the employer acted unreasonably. That specific ruling. I'm sorry. I interrupted you. That specific ruling was never made by the district court. There is no language in the findings of fact and conclusions of law that addresses the reasonableness of the employer's conduct. What the district court concluded was that it breached the enforceable specific promise of pre-termination progressive discipline, and the district court concluded that independent of that, the plaintiff had not violated the account transaction policy. It's kind of an interesting question because in a sense, whether she violated the account transaction policy is irrelevant because the whole notion of progressive discipline presumes that the employee has done something wrong that requires progressive discipline pre-termination. In this case, just to confirm the unreasonableness, although the court didn't use that term, just to confirm the unreasonableness of the employer's action, the court determined that in fact the plaintiff hadn't violated any policy at all. And that's important, Your Honor. You're asking me to address that issue, and I'd like to complete the discussion of that a little bit. If we go back to the beginning of the handbook at issue, the handbook, as the district court found, is something much more than guidelines. The handbook says in the beginning that the employee signs off on it, and the employee is expected to comply with the policies and procedures set forth in the handbook. The handbook doesn't say it's just guidelines. The handbook, the letter from the CEO, Jerry Grundhofer, says you are expected to comply with these policies. And the page that the employee signs off on says that this handbook does not constitute a contract of employment, and that I understand I have the right to terminate my employment at any time, and that the company has the same right, words that appear less than an inch away from your client's name. Sure. And I'd like to address that question, and I'd like to complete my thought with respect to the – I apologize, I don't know the court's names. Marshall. Judge Marshall's question. May I complete my thought and then address that? Complete your thought, but I think it's the same issue. You're trying to say that this handbook becomes a binding obligation because it says take this seriously and they've got to sign it. But what they sign says it's not a contract. It can be chained and you can be terminated. Right. And I'm going to address that. I'm going to address that. Okay. First of all, with respect to Judge Marshall's question, when we say that the handbook is an enforceable – states enforceable policies, the account transaction policy is fairly specific with respect to what constitutes an account transaction. And as this judge – again, I apologize. As Judge Murphy points out, there's nothing in the account transaction policy that in any – that implicates in any way the processing of an insurance policy. There's simply – the record is clear that there was no account opened up any place with respect to the purchase of that insurance policy. So they can't state that the policy says A, B, C, and then add X, Y, Z when they want to interpret it if they expect the employees to comply with the policy. But you can't state that they're limited to terminating only upon grounds stated in the employee handbook because she's just signed something that says they can terminate – No, I can help – I think we get some help from the Washington Supreme Court on that issue, Your Honor, and from the Court of Appeals, both in Swanson v. Liquid Air Corporation and in Walasiak v. Whirlpool, which is an appellate court decision which I think is an 81 Washington appellate. In both cases, the Washington court has said that that language, this is not a contract of employment in employee handbook – in employee handbooks, is inherently ambiguous. Why? Because every employment relationship is contractual in nature. So to say – Stop there. Yes. Because Korslund tells us that this is not a contract claim. Korslund is very specific in saying this is a claim based on justifiable wrong. Absolutely. Absolutely. But the language that said – those are two different questions. The language in the handbook that says this is not a contract, that language is inherently ambiguous according to Swanson and according to Walasiak. Why? Because every employment relationship is contractual. Counsel, let me just – the Washington courts of appeal are a little obtuse on this issue, but let me just see if I understand, you know, how the analysis on this goes. It appears that the first prong of the analysis is whether or not there's a specific promise to the employee, and then you look whether or not that promise has been sufficiently disclaimed, which is the point that Judge Clifton was trying to make. Correct. So those are two different prongs of determining whether or not there is an enforceable promise. That's one way to approach it. Would you like me to address that? Well, what other way is there to approach it? Well, I mean, I think that's probably the correct way to approach it in this case because there is disclaimer language at issue. Right. So if I may, I'd like to address that. All right. First of all, was there an enforceable promise? And the answer to that is yes. That's clear both from the record and from the language of the policy itself. The policy says progressive counseling will be given if your performance doesn't meet up to expectations. The language will be given. You've got to stop because it doesn't say that. I suggest you turn to the page and see where the will – what it says is progressive counseling will provide you with a reasonable opportunity to make the necessary improvements. It doesn't say we're going to give you progressive counseling every time there's a concern. It can't say that because the next sentence makes very clear that they don't have to do that. So I think that the use of the word will when the district court suggests they could have said may, that reconstructs the sentence because the subject of the sentence is not we will provide you progressive counseling. The subject of the sentence is progressive counseling. And it says what progressive counseling will do, not what the bank will do. Well, first of all, and I took during the trial, first of all, this is a factual question. I think we need to put it in context. Whether or not the bank made a specific enforceable promise of pre-termination progressive discipline is a question of fact to be determined by the trier of fact. Is there any fact at issue, any evidence at issue other than the terminology in question? Yeah. The pattern and practice of the employer which the Washington court has specifically held can and should be considered in determining whether the parties intended that the language in the handbook was an enforceable promise of specific treatment in specific situations. The court in Brown versus Scott Paper Company in determining whether or not handbook language modified at will language in the employment relationship, the state supreme court in Brown, 143 Washington 2nd, 349, cited Berg versus Hudisman and said that you look at the language and you look at the subsequent conduct of the. But you're not looking at subsequent conduct in this case because the language didn't come out until two weeks before the termination. That is a little disingenuous, your honor, and I want to address that issue. That's a little disingenuous. First of all, the issue of the timing of the handbook was not raised at the trial. The issue of the timing of the handbook was raised in a post-judgment motion filed by the defendant. The case was tried on the handbook language that was admitted, and the reason the case was tried on the handbook language that was admitted is because that was the specific handbook that was in effect at the time of the termination. The evidence during the trial was that the bank produced a handbook annually, every year, and the practice of the bank forever was to employ a practice of progressive discipline. And we took the district manager, John Stott, through a fairly extensive examination of that. There was never any hint in the trial of this case that there was no language in the handbook, in the prior handbooks, that was, that did not, there was never a hint in the trial of this case that the prior handbooks did not contain a promise of progressive discipline. The bank has stated that in its brief. There's a sentence in the bank's brief that says, prior handbooks did not contain the promise of progressive discipline. There is no fact in the record to support that. There's no testimony, there's no evidence, there's no nothing. This case was tried on that handbook language precisely because that happened to be the language that was in effect at the time. Handbooks were distributed annually. There was no evidence that there was change in that language. And there was, and the record is replete with evidence that the bank had a pattern and practice of progressive discipline. So. We know from Corslan that pattern and practice doesn't do it. You need to find the handbook. And I'm now somewhat adrift because I had read that sentence and didn't see a denial of it, so I took it at face value. Is there any evidence that tells us what the earlier handbook said? Your client justifiably relied upon it. My client justifiably relied on the handbook language that was in evidence at the time. And if you want to get to the question of justifiable reliance and the sufficiency of the evidence on that issue, as the Court has pointed out in the colloquy with counsel before, the Washington appellate courts, both Supreme and the lower appellate court, have not been particularly helpful in defining the quantum of proof or the quality of proof necessary to establish the reliance issue. But I point out page 22 and page 23 of the excerpts of records that we submitted, I asked Ms. Messenger at trial, all right, Ms. Messenger, had you during your tenure of employment with the U.S. Bank, had you read and reviewed that language on page 27 of the employee handbook? Answer, yes, I have. So now we're around Bowman. Bowman says you can't rely on it if you don't know about it. Now we're around Bowman. Did you rely on that in maintaining your employment at U.S. Bank? Answer, yes, I did. So that evidence is in the record. If we're looking for sufficient evidence to support a finding of fact on reliance, it's there. But beyond that ---- Here's my problem, to be very specific about it. If it were the case that that language first emerges two weeks before the termination, I think it's difficult, it's not even possible to infer justifiable reliance or any inducement because her claim is, after termination, that despite efforts to mitigate and so forth, she's damaged to the tune of $150,000. So it's not like she had other opportunities being dangled in front of her or she wouldn't have a damage claim. The timing may be wrong. It may be that this language doesn't first emerge in the handbook two weeks before termination. But if it does, I don't see how under Corzine there can be much of a case. Because where's the justifiable reliance? What did she do during those two weeks? How was she induced by the handbook to behave in a way that was contrary to her interests? Our courts haven't told us that we have an extended period of time to demonstrate justifiable reliance. What our courts have ---- What reliance at all existed here? If it's true two weeks before is when the first time she gets that language, then what reliance could there be? Well, she's also testified. In addition to that, she's also testified that she was trained to implement a policy of progressive discipline in the workplace. And the employer's district manager, Mr. Stott, testified that it was the norm to practice progressive discipline in the workplace. That's back to the practice and pattern. We've already acknowledged or you've already acknowledged you've got to have a handbook to make out the case. And we do. And we do. But you only have the handbook two weeks before the termination. We don't know that, Your Honor. I don't think we know that. That's the issue I'm confronted with. I think the evidence and, Mr. Struden, I think the evidence as determined by the trier of fact in this case was that there was handbook language in effect during the tenure of employment. And the evidence on that issue was that there were handbooks issued annually. And the handbook at issue had the progressive discipline language in there. There was no evidence offered by the employer to suggest that the handbook language was not in in prior editions or prior, yeah, prior editions of it. Was there evidence in the record of these prior handbooks and that the language in prior handbooks was consistent with the language in this one issue? No, Your Honor. There was not. And the claim was never raised. The claim was never raised at summary judgment. The claim was never raised in pretrial proceedings. The claim was never raised at summary judgment, that there was not a, that there was not progressive discipline language in prior handbooks. This came up as a surprise after the trial, after the trial. Was there any evidence about how often handbooks were distributed? Yes. Was there evidence in the record that handbooks were distributed every year? Yes. Mr. Stott testified that they were distributed annually. And Mr. Stott testified that the bank had a pattern of practice of progressive discipline. And I asked Mr. Stott whether he, as a bank employee, had a reasonable expectation of progressive discipline, and he said yes. And I asked Mr. Stott whether his subordinates and co-employees at U.S. Bank had a reasonable expectation of progressive discipline, and he said yes. Was that tied to the language in the handbook from two, that was given, circulated two weeks before? Was that testimony tied to the progressive discipline language? Yes. Yes. I mean, that was the handbook language that was debated throughout the trial, throughout the trial. Two cases, the analysis, to get back to the question of how does the analysis go, the first question is, was there a specific enforceable promise? That's a fact question, and the Court tells us that you look at the policy language and you look at the pattern of practice. Two cases have pointed out that the language, that the use of the word will is mandatory. Corslan tells us that. I'm reading from Corslan at star page 11. It says, however, the alleged promises provide that some corrective action will be taken against management or other employees who harass, intimidate. And then they go on and they distinguish that language from the Stewart case that had discretionary language. Thus, while there is discretion as to what action is taken, there is no discretion that some disciplinary action will be taken contrary to dying court's contention. This case is therefore unlike Stewart. Is that true here? Pardon me? Is that true with the language here? Is there a promise that progressive discipline will be provided without discretion to the company? That, Your Honor, is a question of fact. By virtue of Swanson and Keist and several other Washington appellate court decisions and the trier of fact in this case made the determination that based on the language and the bank's pattern of practice, there was a specific enforceable promise. There's evidence in the record to support that finding, and with all due respect, it's not for this court to reverse that factual finding. And it is a question of fact because Brown tells us to look to the language of the handbook and the practice of the employer. And the record in this case is replete with both. And the district court found as a matter of fact that there was a specific enforceable promise of pre-termination progressive discipline. Does counsel agree that Corslan indicates that the plaintiff must show inducement and if you agree that inducement must be shown, what was the evidence to support that or findings by the trial court on that issue? Mom, I think the law is we have to show reliance, okay? What level of inducement we have to show is unclear, but the evidence in the record is that which I just reviewed. I asked Ms. Messinger whether she relied on the language in maintaining her employment, and the answer was yes, she did. I should be able to, excuse me, there is a, I cite Carlson versus Lake Chelan Hospital District. I argued this case to the trial court, and I cite that case to this court. There's language in the Carlson decision that addresses this level of how much, this question of how much reliance does the plaintiff have to show after the Bowman case. And I cite the court to that decision for its consideration. I don't have the language right at my fingertips. In any event, this is a, to put the case in context, all of the questions at issue here are factual. Whether or not there was a specific enforceable promise is factual. Whether there was reliance is factual. Whether there was a breach of that promise is factual. The district court made factual findings on all of those issues. Those factual findings are supported by the evidence in the record. This is a sufficiency of the evidence case. It's there. We ask that the court affirm the decision of the trial court. I appreciate your time. All right. Thank you, counsel. Rebuttal. Your Honor, I'd like to quickly address the issue of the prior handbooks. It has not been clear all along what it is, the written promise, or if there was a specific written promise that the plaintiff was relying on to support her claim here, and at her deposition she actually denied that this particular policy was the one she was thinking of, and she thought there would be another one, and there was another one, but she couldn't find it at the time. Were those questions asked of her during trial? Well, so for purposes of trial, I submitted to the court all, and which had also been produced in discovery, all employee handbooks that had been in effect during the entire duration of Ms. Messenger's employment. I did not submit the only one entered into evidence was the employee handbook that's at issue today, and that's because the other handbooks didn't contain this same language. Counsel, you cannot make that representation if there's nothing in the record to support that. Well, Your Honor, that was not my burden of proof. It wouldn't have made any sense for me to introduce all handbooks in order to show that there was no other promise, and not only did we have handbooks, we had all sorts of policies that could have, you know, could have contained alleged promises of specific treatment. It's the plaintiff's burden to show that there was a written promise of specific treatment in specific situations, and the only handbook introduced into evidence was the one that she received two weeks ahead of time. We have a written acknowledgment that's in the record. That's not the technical maneuver that backfired. Honestly, Your Honor, not at all. It was we went into this trial with a number of different policies being held out there as potential promises. In the end, this is the one that it landed on. It's plaintiff's burden to show, it was plaintiff's choice to choose which policy she's stating her claim on, and in the end the court relied on the pattern and practice because of the absence of policy. And we did bring a post-trial motion. There was no dispute. And, again, you know, it's not like the other side did not know what the other policies and handbooks contained. Was there an affidavit with your post-trial motion that stated prior handbooks did not contain this language? Your Honor, I'm not sure of that. I know that they were we submitted them to the court, and we just didn't enter them into as a trial. I mean, in your post-trial motion, when you made the argument that prior handbooks did not contain this language, did you submit an affidavit from Human Resources or anyone else to support that assertion? Your Honor, I don't believe I submitted an affidavit from Human Resources, and I thought anyone. I may have included a declaration of my own. I mean, you know, I believe that it was undisputed that the prior handbooks, which had been submitted to the court but not entered as a trial exhibit, did not contain this language. And, again, it was the plaintiff's burden to show that there was a handbook or policy, written policy in place, and the only written policy that was identified was the one which was issued two weeks prior to her discharge. And the judge specifically found ruled on that particular policy. There was no finding that any prior policy contained this language. There was – there were findings about the practice of the bank, and Mr. Burns described Mr. Stott's testimony about progressive discipline. Mr. Stott was very clear that his vision of progressive discipline always included immediate termination when the bank determined it was warranted, because both the district manager, John Stott, and the HR manager explained the practice of the bank as to, in situations where the bank doesn't think that termination is warranted, they engage in progressive discipline generally. But opposing counsel said that that testimony was tied to handbook provisions over time. I don't – I – Mr. Stott was questioned about this particular language in this particular handbook. Mr. Stott's been employed at the bank for 24 years, and there have been – Right. But to – he was – so your – your recollection, he was – he was questioned about the practice only for two weeks, for the two weeks prior to her termination? He was questioned about the specific language of the policy, and he was also questioned about the specific practice of the bank, but that was not tied to any previous written policy. Oh, that's why you're opposing counsel. And there is no evidence that there is any previous written policy. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Clifton, Marshall